[No. B205343. Second Dist., Div. Three. Apr. 27, 2009.]

CARLOS OLVERA et al., Plaintiffs and Respondents, v.
EL POLLO LOCO, INC., Defendant and Appellant.

COUNSEL

Carlton DiSante & Freudenberger, Timothy M. Freudenberger and Leigh A. White for Defendant and Appellant.

Arias Ozzello & Gignac, Mike Arias and Mikael H. Stahle for Plaintiffs and Respondents.

OPINION

**CROSKEY, J.**—El Pollo Loco, Inc. (El Pollo Loco), appeals the denial of its motion to compel arbitration of a complaint filed by Carlos Olvera. The trial court determined that the employment arbitration agreement was procedurally and substantively unconscionable. El Pollo Loco contends (1) the arbitration agreement is neither procedurally nor substantively unconscionable; (2) the class arbitration waiver is not unenforceable under the rule from *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*); and (3) the overruling of its evidentiary objections was error. We conclude that El Pollo Loco has shown no prejudicial error and affirm the order.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### 1. *Factual Background*

Olvera was the general manager of a restaurant owned and operated by El Pollo Loco. El Pollo Loco distributed written materials to its employees in June 2003. The first page of the materials bore an El Pollo Loco logo with no

other text. The second page showed a chart entitled "BENEFITS," with six columns headed "Part time Crew," "Full time crew 6+ months," "Full time crew 18+ months," "Shift Supervisor," "Restaurant Manager," and "General Manager." Each column listed benefits such as "On-duty meal discount 50%" or "Free on-duty meals," "Off-duty meal discount 25%," "Employee Assistance Program," "401(k)," and the like. The third page stated "What's New?" in large type and "Look inside for answers," in both English and Spanish, with a drawing of people looking up at a bulletin board.

A series of pages resembling the "What's New?" page then followed. Each page in the series had large type, a drawing, and text in both English and Spanish. Each of those pages presented a question or statement followed by an answer or explanation. Those pages explained the requirements for full-time status and stated that, beginning June 5, only full-time employees would accrue vacation time. The last page in the series stated, "What is the new Dispute Resolution Policy?" followed by an explanation: "Any employee with a work-related problem should contact the General Manager, Area Leader, Human Resources Manager or other management person to resolve the problem. If all attempts to resolve the problem are unsuccessful, the new policy requires that the employee and the company use a mediator to assist them in reaching a resolution. See your General Manager for additional details." There was no mention of arbitration.

Those pages were followed by a page showing a paycheck stub and stating in English and Spanish that, beginning June 18, paychecks would show "your corrected Vacation Balance and correct Weekly Average Hours."

Following that was a series of pages headed "El Pollo Loco-Policies and Procedures Manual," in English only, each identifying a particular policy by title and stating an effective date of June 5, 2003. The text on those pages appeared in smaller sized type, and there were no drawings. The titles were "VACATION," followed by "REST AND MEAL BREAKS—NON-EXEMPT EMPLOYEES," and finally "DISPUTE RESOLUTION."

The dispute resolution policy stated that all employment-related disputes must be resolved through binding arbitration. It stated that the policy was governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) and that a neutral arbitrator would be selected by mutual agreement of the parties. It stated procedures for demanding arbitration and that the parties "may agree" to mediation, but that the sole means to resolve any dispute not resolved through other means was through arbitration. It also stated that the parties would have the right to conduct discovery and bring motions in an arbitration as provided by the Federal Rules of Civil Procedure, but that class arbitration was prohibited.

The last page of the materials was a form headed "ACKNOWLEDG-MENT," stating in English and Spanish: "I have received, understand and agree to be bound by the material in this Mid-Year Policy Update, which includes clarification of full and part-time status, and policies on Vacation, Rest and Meal Periods, Open Communication and Dispute Resolution," followed by a signature line. Olvera signed the form on June 13, 2003.

## 2. *Trial Court Proceedings*

Salvador Amezcua filed a class action complaint against El Pollo Loco in October 2005. He alleged that he was employed as general manager of a restaurant owned and operated by El Pollo Loco. He alleged that he and other El Pollo Loco general managers were treated as exempt managerial workers but spent the majority of their time performing nonmanagerial tasks, that they were wrongfully denied overtime compensation, and that they were unable to take meal breaks. He also alleged that El Pollo Loco's incentive compensation system resulted in deductions from the employees' wages for losses that should have been borne by the employer. The court determined that this action was related to another class action, *Elias v. El Pollo Loco, Inc.* (Super. Ct. L.A. County, No. BC313875) (*Elias*). Both cases were reassigned to the same judge.

El Pollo Loco demurred to the complaint in July 2006, arguing that Amezcua had no standing to sue because he had filed a bankruptcy petition and that the claims were the property of the bankruptcy trustee. El Pollo Loco also moved to compel arbitration of the complaint by Amezcua. Amezcua opposed the motion, and filed a first amended complaint in August 2006 adding Olvera as a named plaintiff. The first amended complaint alleges counts for (1) failure to pay overtime; (2) failure to provide meal breaks; (3) unlawful deductions from earnings; (4) failure to provide accurate, itemized wage statements; (5) unfair business practices (Bus. & Prof. Code, § 17200 et seq.); and (6) conversion. Amezcua then dismissed the complaint with prejudice as to himself only, leaving Olvera as the sole named plaintiff.

El Pollo Loco filed a motion to compel arbitration of the complaint by Olvera. Olvera opposed the motion. At a hearing on the motion in October 2006, the trial court requested supplemental briefing on procedural and substantive unconscionability. The court also sustained without leave to amend a demurrer to the sixth count for conversion. The court later stayed the action pending a decision by the California Supreme Court on a petition for review in another action.

El Pollo Loco filed a new motion to compel arbitration in October 2007, after the California Supreme Court filed its opinion in *Gentry, supra*, 42

Cal.4th 443. El Pollo Loco argued that Olvera was a party to an arbitration agreement that precluded class arbitration and that the agreement was neither procedurally nor substantively unconscionable. It filed a declaration stating that its employees were not required to sign the acknowledgment form or given a deadline to return the signed form, that the employees were free to decide whether to sign the form, and that some employees did not return a signed form. It also argued that enforcing the class arbitration waiver would not undermine the employees' unwaivable statutory rights under the rule from *Gentry, supra*, 42 Cal.4th 443. El Pollo Loco argued that two of the named plaintiffs in the *Elias* action did not sign the arbitration agreement and therefore could not be compelled to arbitrate, and that compelling Olvera to arbitrate his individual claims in this action would not prevent its current and former employees from maintaining a class action in *Elias* if the court were to grant class certification in that action. El Pollo Loco sought an order compelling Olvera to arbitrate his individual claims and staying the trial court proceedings pending completion of the arbitration.

Olvera argued in opposition that the arbitration agreement was procedurally unconscionable because it was presented as a nonnegotiable policy change applicable to all employees, and because the more easily readable portion of the materials given to the employees misrepresented the dispute resolution policy as required mediation rather than arbitration. He argued that the class arbitration waiver was one-sided because only the employees would contemplate seeking classwide relief, and that the arbitration agreement therefore was substantively unconscionable. He also argued that a class action would be the most effective means of vindicating the employees' unwaivable statutory rights, and that consideration of the modest size of the potential individual recovery, the potential for retaliation against individual employees who sue the company, and the fact that some employees may be unaware of their legal rights supported the conclusion that the class arbitration waiver was unenforceable under the rule from *Gentry, supra*, 42 Cal.4th 443. He argued that if the class arbitration waiver were deemed enforceable, any class certification in *Elias* could not vindicate the unwaivable statutory rights of those employees who had signed the arbitration agreement and that, in any event, the potential for class certification in *Elias* remained uncertain. Olvera argued further that, in light of the foregoing, the entire arbitration agreement was permeated with an unlawful purpose, so severance was inappropriate.[1]

Olvera filed an unsigned declaration in opposition to the motion, indicating that his signed declaration would be lodged before the hearing. El Pollo Loco objected to the entire Olvera declaration on the grounds that he had failed to timely file a signed declaration. El Pollo Loco also objected to parts of the

---

[1] El Pollo Loco did not address the issue of severability in its reply brief filed in support of its motion to compel arbitration.

Olvera declaration on other grounds. Olvera filed a signed declaration on October 22, 2007, four days before the hearing on October 26, 2007. He declared that he felt compelled to sign the acknowledgment form, that he was never told that the new dispute resolution policy provided for mandatory arbitration, and that he never understood this before he signed the form.

The court denied the motion to compel arbitration. The court stated after counsel's argument at the hearing: "The court finds both substantive and procedural unconscionability with respect to the document. You need not forget that substantive unconscionability can come about where it is undisputedly one-sided. And that's what's happened in this case. Defendant is not going to give up any class claims against plaintiffs, so it suffers no detriment in giving up that right. And I could go on and on. I am going to do probably just a very brief minute order. But I have covered most of the points in the oral exchange that we have had concerning argument." The order denying the motion stated that the arbitration agreement was both procedurally and substantively unconscionable and that the evidentiary objections by El Pollo Loco were overruled in their entirety. The court denied the motion to compel arbitration and did not expressly address the issue of severance. El Pollo Loco timely appealed the order.[2]

## CONTENTIONS

El Pollo Loco contends (1) the arbitration agreement is neither procedurally nor substantively unconscionable; (2) the class arbitration waiver is not unenforceable under the rule from *Gentry, supra*, 42 Cal.4th 443; and (3) the overruling of its evidentiary objections was error. El Pollo Loco seeks a reversal of the order denying its motion to compel arbitration, with directions to the trial court to grant the motion and compel Olvera to arbitrate his individual claims.

## DISCUSSION

1. *Legal Framework*

A party petitioning the court to compel arbitration (Code Civ. Proc., § 1281.2) bears the burden of proving by a preponderance of evidence the existence of an arbitration agreement. A party opposing the petition bears the burden of proving by a preponderance of evidence any fact necessary to its defense. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) The trial court sits as the trier

---

[2] An order denying a motion to compel arbitration is appealable. (Code Civ. Proc., § 1294.)

of fact for purposes of ruling on the petition. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

■ The California Arbitration Act (Code Civ. Proc., § 1280 et seq.) compels the enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) Code of Civil Procedure section 1281 states: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." ■ Under California law, as under the FAA, an arbitration agreement may be invalidated upon the same grounds as any other contract. (*Armendariz, supra*, at p. 98.) In other words, although arbitration agreements ordinarily are enforced according to their terms, their enforceability is limited by the same general contract law principles governing the enforceability of any contract. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 163 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*).)

### 2. The Arbitration Agreement Is Procedurally Unconscionable

■ A contract is unenforceable, in whole or in part, if it is unconscionable. (*Armendariz, supra*, 24 Cal.4th at pp. 113–114.) Both procedural and substantive unconscionability must be present to justify the refusal to enforce a contract or clause based on unconscionability. (*Id.* at p. 114.) Procedural unconscionability focuses on oppression or unfair surprise, while substantive unconscionability focuses on overly harsh or one-sided terms. (*A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114]; U. Com. Code, com. 1, 23A West's Ann. Cal. Com. Code (2002 ed.) foll. § 2302, p. 246.[3]) The more procedural unconscionability is present, the less substantive unconscionability is required to justify a determination that a contract or clause is unenforceable. Conversely, the less procedural unconscionability is present, the more substantive unconscionability is required to justify such a determination.[4] (*Armendariz, supra*, 24 Cal.4th at p. 114.)

---

[3] Civil Code section 1670.5 codified the common law doctrine of unconscionability. (*Armendariz, supra*, 24 Cal.4th at p. 114.) "Section 1670.5 is based upon Uniform Commercial Code section 2-302, but expands coverage to include noncommercial contracts." (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925, fn. 10 [216 Cal.Rptr. 345, 702 P.2d 503].)

[4] *Gentry* held that a class arbitration waiver in an employment arbitration agreement is contrary to public policy and therefore unenforceable if the waiver impermissibly interferes with the employees' ability to vindicate unwaivable statutory rights. (*Gentry, supra*, 42 Cal.4th at pp. 456–457, 466.) We refer to this as the rule from *Gentry*. This holding was based on the general principle that courts will not enforce a contract that is contrary to public policy, rather than the principle of unconscionability. *Gentry* also held that the arbitration agreement as a whole was procedurally unconscionable despite a provision allowing employees to opt out of the agreement within 30 days, as discussed *post*. (*Id.* at pp. 470–472.)

■ Oppression results from unequal bargaining power when a contracting party has no meaningful choice but to accept the contract terms. (*A & M Produce Co. v. FMC Corp., supra*, 135 Cal.App.3d at p. 486; see Spanogle, *Analyzing Unconscionability Problems* (1969) 117 U. Pa. L.Rev. 931, 944.) Unfair surprise results from misleading bargaining conduct or other circumstances indicating that a party's consent was not an informed choice. (*A & M Produce, supra*, at p. 486; see Spanogle, *supra*, at p. 943.)

*Gentry* held that an employment arbitration agreement was procedurally unconscionable despite the presence of a 30-day opt-out provision because there were indications that the plaintiff's failure to exercise that option was not a free and informed decision. (*Gentry, supra*, 42 Cal.4th at pp. 470–472.) *Gentry* stated that the plaintiff's decision was not an informed decision because an explanation of the benefits of arbitration in an employee handbook failed to mention significant disadvantages of the particular arbitration agreement compared with litigation, and therefore was "markedly one-sided" and presented "a highly distorted picture." (*Gentry, supra*, 42 Cal.4th at pp. 470, 471.) *Gentry* stated that the plaintiff's decision likely was not made freely because the materials provided to the plaintiff clearly expressed the employer's preference for arbitration. (*Id.* at pp. 471–472.) *Gentry* stated: "Given the inequality between employer and employee and the economic power that the former wields over the latter (see *Armendariz, supra*, 24 Cal.4th at p. 115), it is likely that Circuit City employees felt at least some pressure not to opt out of the arbitration agreement. The lack of material information about the disadvantageous terms of the arbitration agreement, combined with the likelihood that employees felt at least some pressure not to opt out of the arbitration agreement, leads to the conclusion that the present agreement was, at the very least, not entirely free from procedural unconscionability." (*Id.* at p. 472, fn. omitted.)

We conclude that the record here indicates a degree of procedural unconscionability in two respects. First, as in *Gentry, supra*, 42 Cal.4th at page 472, the inequality in bargaining power between the low-wage employees and their employer makes it likely that the employees felt at least some pressure to sign the acknowledgment and agree to the new dispute resolution policy, whatever they understood that policy to be.

Second, it appears that the employees' agreement to be bound by the new dispute resolution policy was not an informed decision. The explanatory materials provided to the employees stated that the "new Dispute Resolution Policy" was that employees should first contact management to resolve any problem and then, if the problem was not resolved in that manner, mediation was required. This was stated in large type, in both English and Spanish, and presented in an inviting, easy-to-read format. The description of the new

policy, however, was totally inaccurate. The dispute resolution policy itself, on another page, required binding arbitration of all employment-related disputes and stated that the parties "may agree to mediate," not that mediation was required. The description provided in the explanatory materials was misleading in that it described the new policy as one of required mediation rather than required arbitration. Moreover, the policy itself appeared in much smaller type than the explanatory materials, and in English only. This exacerbated the effect of the misrepresentation and made it more likely that the employees would be misled.

We conclude that the misleading explanatory materials together with the pressure that the employees likely felt to sign the acknowledgment render the arbitration agreement procedurally unconscionable. Particularly in light of the totally inaccurate and misleading explanatory materials, we conclude that the degree of procedural unconscionability is high.

### 3. *The Class Arbitration Waiver Is Substantively Unconscionable*

Substantive unconscionability focuses on overly harsh or one-sided terms, as we have stated. *Discover Bank, supra*, 36 Cal.4th 148, held that a class arbitration waiver in a consumer credit cardholder agreement was unconscionable. (*Id.* at pp. 162–163.) The class arbitration waiver, provided as a " 'bill stuffer' " amending the cardholder agreement, was procedurally unconscionable because the cardholder was deemed to accept the amendment if the cardholder did not close the account. (*Id.* at p. 160.) The waiver was substantively unconscionable as an exculpatory clause for two reasons. First, in a consumer contract, in a setting where disputes typically involve small amounts, the effect of the waiver was to insulate the credit card company from class actions, which often provide " 'the only effective way to halt and redress' " alleged wrongful conduct. (*Id.* at p. 161.) Second, the waiver was unfairly one-sided " 'because credit card companies typically do not sue their customers in class action lawsuits.' [Citation.]" (*Ibid.*) *Discover Bank* stated that not all class action and class arbitration waivers are necessarily unconscionable, but that, in circumstances like those presented in that case, a waiver effectively exempts the defendant from responsibility for its own willful injury to another (Civ. Code, § 1668) and therefore is unconscionable. (*Discover Bank, supra*, 36 Cal.4th at pp. 162–163.)

■ *Gentry* stated that *Discover Bank, supra*, 36 Cal.4th 148, was not intended to suggest that consumer class actions in which the amounts of damages were miniscule were the only actions in which class action and class arbitration waivers were unenforceable. (*Gentry, supra*, 42 Cal.4th at p. 457.) "Rather, *Discover Bank* was an application of a more general principle: that although '[c]lass action and arbitration waivers are not, in the abstract,

exculpatory clauses' (*Discover Bank, supra,* 36 Cal.4th at p. 161), such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." (*Ibid.*)

The class arbitration waiver here would insulate El Pollo Loco from employee class actions and class arbitrations on behalf of those employees who signed the acknowledgment. The arbitration agreement applies not only to restaurant general managers, such as Olvera, but to all employees who signed the acknowledgment, many of whom presumably are low-wage earners. A class action or class arbitration may be the most effective way, and perhaps the only effective way, for those employees to vindicate their statutory rights.[5] (*Gentry, supra,* 42 Cal.4th at pp. 457–463; *Discover Bank, supra,* 36 Cal.4th at p. 161.) This is true particularly if many of those employees are low-wage earners with limited English language skills who are likely ill informed of their statutory rights (*Gentry, supra,* at p. 461), as appears to be the case here. Moreover, the waiver is unfairly one-sided because it benefits only El Pollo Loco, which is unlikely to sue its employees in a class action lawsuit. (*Discover Bank, supra,* at p. 161.) We therefore conclude that the class arbitration waiver is substantively unconscionable.

We conclude that the high degree of procedural unconscionability of the arbitration agreement as a whole together with the substantive unconscionability of the class arbitration waiver renders that provision unconscionable. In light of our conclusion, we need not decide whether the class arbitration waiver is unenforceable under the rule from *Gentry, supra,* 42 Cal.4th 443.[6]

### 4. *El Pollo Loco Waives Any Claim of Error Regarding Severability*

El Pollo Loco did not argue in the trial court and does not argue on appeal that any unconscionable provision should be severed and the rest of the arbitration agreement enforced. Although it argues that the sole basis for the trial court's finding of substantive unconscionability was the lack of mutuality of the class arbitration waiver, El Pollo Loco does not argue that the provision is severable. Instead, it argues that the entire arbitration agreement, including the class arbitration waiver, is free from procedural and substantive

---

[5] The potential for class certification in *Elias* does not obviate this concern. The named plaintiffs in that action did not sign the acknowledgment and, therefore, presumably could not vindicate the statutory rights of those employees who were bound by the arbitration agreement, if the agreement were enforceable.

[6] Our analysis in this opinion relies only on the evidence submitted by El Pollo Loco in support of the motion to compel arbitration, and does not rely on the Olvera declaration. We therefore need not decide whether the overruling of the objections to that declaration was proper.

unconscionability and that Olvera should be compelled to arbitrate his individual claims. El Pollo Loco has not indicated that it would continue to seek arbitration if only the class arbitration waiver were invalidated. In these circumstances, we regard El Pollo Loco's failure to argue the issue on appeal as a waiver of any claim of error regarding severability. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].)

## DISPOSITION

The order is affirmed. Olvera is entitled to recover his costs on appeal.

Klein, P. J., and Kitching, J., concurred.