[No. E047802. Fourth Dist., Div. Two. Aug. 13, 2010.]

AMBERLEE FISHER, Plaintiff and Respondent, v.
DCH TEMECULA IMPORTS LLC, Defendant and Appellant.

## COUNSEL

Manning, Leaver, Bruder & Berberich, Christian J. Scali and Wade R. Kackstetter for Defendant and Appellant.

Jonathan Morrison for California New Car Dealers Association as Amicus Curiae on behalf of Defendant and Appellant.

Rosner, Barry & Babbitt, Hallen D. Rosner and Christopher P. Barry for Plaintiff and Respondent.

## OPINION

**RICHLI, J.**—Defendant DCH Temecula Imports LLC (DCH) appeals the denial of its petition to compel arbitration. The trial court found that an arbitration clause in a retail installment sales contract (RISC) for the sale of a car to plaintiff Amberlee Fisher, which included a waiver of the right to bring a class action lawsuit or request classwide arbitration, was unenforceable.

Fisher presented several theories to the trial court in opposition to the enforcement of the arbitration clause, including that the arbitration clause required her to waive an unwaivable statutory right to bring a class action lawsuit under California's Consumers Legal Remedies Act (the CLRA; Civ. Code, § 1750 et seq.) and that the arbitration agreement was both procedurally and substantively unconscionable.

We uphold the trial court's denial of the petition to compel arbitration.

I

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Fisher's Complaint*

On July 29, 2008, Fisher filed her complaint for injunctive relief, restitution, rescission, and damages both on her own behalf and as a class action lawsuit. Fisher defined the class as those who purchased a vehicle from DCH from July 28, 2003, to the present, and (1) after signing an RISC, DCH rescinded the original RISC and had the consumer sign a subsequent RISC for the same vehicle, but the new contract was dated the date of the original purchase contract and involved financing at an annual percentage rate greater than 0.00%, and/or (2) who executed an RISC for the purchase of a vehicle for personal use where registration and licensing fees were not properly disclosed on a separate line in the contract as required.

As for Fisher's individual claims, she alleged that in August 2007 she agreed to purchase a used 2004 Dodge Neon from DCH. She was advised the vehicle had been through a thorough inspection and was a safe vehicle. It was not disclosed that it had previously been used as a daily rental vehicle. She further alleged that her RISC did not separately itemize the license and registration fees.

According to the allegations in the complaint, Fisher began having problems with the vehicle. In the meantime, she was contacted by DCH and informed she had to sign a new RISC. Fisher refused, but DCH threatened to repossess her vehicle if she did not. She signed a new RISC, which provided for a new finance company. The contract she signed on August 14, 2007, was backdated to August 7, 2007.

Fisher listed six causes of action for the class, including violation of the CLRA and Civil Code sections 1750 and 1780, subdivision (a)(2) for backdating contracts; violation of the CLRA and Civil Code sections 1750 and 1770, subdivision (a) for improperly designating license and registration fees; violation of the Automobile Sales Finance Act (the ASFA) and Civil Code section 2981 for backdating the second sales contract; violation of the ASFA and Civil Code section 2981 for improperly designating license and registration fees; commission of unlawful, unfair, and/or fraudulent business practices and violation of Business and Professions Code section 17200 for backdating the second sales contracts; and commission of unlawful, unfair, and/or fraudulent business practices and violation of Business and Professions Code section 17200 for failing to properly designate license and registration fees.

Fisher listed four additional individual causes of action, including negligent misrepresentation of the condition and inspection of the Neon; intentional misrepresentation of the condition of the Neon, the terms of the contract, and repossession rights; violation of the CLRA and Civil Code section 1750 for misrepresentation of the Neon's condition and inspections; and violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) and Civil Code section 1790 for delivering a vehicle with serious defects and nonconformities with warranties.

In her prayer for relief, Fisher requested, among other amounts, rescission and/or restitution of all monies required to be expended by her and the class, plus injunctive relief on the individual and class claims.

B.  *DCH's Petition for Order Compelling Arbitration*

On December 1, 2008, DCH filed its notice of petition and petition for orders compelling binding contractual arbitration, severing injunctive relief claims if inarbitrable, staying or dismissing proceedings pending arbitration, and staying injunctive relief claims pending arbitration if inarbitrable (petition to compel arbitration). According to the petition to compel arbitration, DCH had demanded that Fisher enter into binding arbitration prior to filing the complaint, but she had refused.

The binding arbitration clause appeared in a box on the back of the agreement in both the first and second RISC that Fisher signed. The page on which it appeared was neither signed nor initialed. In bold letters it stated, "ARBITRATION CLAUSE PLEASE REVIEW—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS." It stated: "Either you or we may choose to have any dispute between us decided by arbitration and not in court or by jury trial." (Capitalization omitted.) It also stated, "If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us including any right to class arbitration or any consolidation of individual arbitrations." (Capitalization omitted.) It further stated, "You expressly waive any right you may have to arbitrate a class action." Finally, it included language that, if the waiver of class action lawsuits or classwide arbitration was found unenforceable, the entire arbitration clause was unenforceable.

The petition to compel arbitration requested that the court find Fisher's claims of injunctive relief under the CLRA to be amenable to arbitration; if it found they were not, the court should sever them from the arbitrable claims. DCH contended the arbitration clause in the RISC signed by Fisher was governed by title 9 United States Code section 2, part of the Federal Arbitration Act (the FAA). The FAA preempted any California laws. Further, the petition

to compel arbitration was governed by Code of Civil Procedure section 1281 except where application of that section would frustrate section 2 of the FAA. The sale of the Neon involved interstate commerce because the vehicle was manufactured outside of California and transported to California on interstate highways; accordingly, the FAA applied. DCH also claimed that the class action waiver was enforceable due to the fact that the dispute in this case involved large amounts of money and did not warrant class action.

Attached to the petition to compel arbitration were declarations from DCH employees. David Pavlik was a finance and insurance manager with DCH. He was responsible for having customers sign the RISC. It was his practice to explain the documents to the customer at the time they were signed. On August 7, 2007, Fisher signed an RISC for the purchase of the Neon. On August 14, 2007, Fisher signed a rewritten RISC.

DCH requested a stay of the lawsuit pending the resolution of whether arbitration would be ordered. That request was granted by the trial court.

### C. *Fisher's Opposition to the Petition to Compel Arbitration*

Fisher opposed the petition to compel arbitration, contending that the CLRA claims seeking injunctive relief could not be arbitrated. Fisher additionally argued that the FAA did not preempt California law. Fisher claimed that she had a right under the CLRA to file a class action lawsuit and could not be asked to waive that right. She also argued that the arbitration clause was both procedurally and substantively unconscionable.

Fisher pointed out in her opposition that the arbitration clause contained a "poison pill": It stated that, if the classwide arbitration and class action lawsuit waivers were found to be unenforceable, the entire arbitration clause was unenforceable. Based on the language in the RISC, the inarbitrable claims could not be severed, and the entire arbitration clause could not be enforced.

In a declaration filed with her opposition, Fisher claimed that on August 7, 2007, when she signed the RISC, she was given a large stack of documents and told to sign them; they were not explained to her. She did not know she could negotiate the terms. She was never told about the arbitration clause on the back side of the RISC, and she did not see it. The arbitration clause was not explained to her. Fisher had no idea what arbitration was.

When she signed the second contract on August 14, 2007, she was not told about the arbitration clause. She was not financially able to pay for arbitration. Fisher contends that at no time in signing the first or second RISC was the issue of arbitration discussed.

### D. DCH's Reply to Fisher's Opposition to the Petition to Compel Arbitration

In its reply to Fisher's opposition, DCH admitted that the trial court was bound by precedent that held injunctive relief claims are inarbitrable. It contended that the noninjunctive relief claims should also be subject to arbitration because (1) the class action waiver was not unconscionable and was enforceable; (2) the arbitration clause was not unconscionable, and if part of it was, that offending part should be severed; (3) DCH did not waive the right to arbitrate; and (4) the inarbitrable claims must be severed and stayed while the arbitrable claims proceed.

DCH argued that many of the cases cited by Fisher regarding unconscionable classwide arbitration waivers involved smaller amounts of money. Further, there was no unwaivable statutory right under the CLRA. DCH argued the arbitration agreement was not unconscionable and agreed the standard was a determination of procedural and substantive unconscionability. DCH also argued that the CLRA injunctive relief claims must be arbitrated under the FAA or be severed and stayed pending arbitration of the other claims.

Attached to the reply was a declaration from Ken Colson, the general manager of DCH. He stated that DCH's RISC was a preprinted form. DCH also had programmed in its computer a similar sales contract that did not include the arbitration provision. He directed his sales and finance staff to explain the terms of the RISC to customers. A customer was free to negotiate the terms of the sales contract.

The average price of a vehicle sold at DCH was $23,000, plus between $4,000 and $8,000 in finance charges. That amount would have to be paid by DCH if a sales contract was rescinded. The Neon was sold for $14,304.60. DCH had never enforced paying only the first $1,500 of the arbitration fee, even though the language of the arbitration clause included such limit. It was DCH's policy to pay all of the fees up front for the customer. The RISC had been changed to separate the license and registration fees to conform with state law since Fisher had signed the RISC.

DCH also provided a declaration from DCH's attorney, who represented automobile dealerships and the California New Car Dealers Association (CNCDA), which was comprised of 1,400 new-vehicle dealerships in California. He declared that a lawsuit involving rescission of an automobile contract usually rendered an award of $20,000 to $40,000.

Pavlik, the finance and insurance manager, submitted a supplemental declaration. He again indicated that his practice, in order to ensure customer

satisfaction, was to explain the RISC to the customer. Pavlik encouraged questions regarding the documents from the customer.

Fisher filed objections to the declarations. She asked that the supplemental declaration from Pavlik be stricken as irrelevant. Further, a majority of the attorney's declaration was irrelevant. Fisher also objected to Colson's declaration based on lack of personal knowledge, foundation, and relevance.

### E.   Hearing of February 2, 2009, and Order

A hearing on the petition to compel arbitration was held on February 2, 2009. The trial court first noted that it had read the "lengthy documentation" filed by the parties, including the points and authorities, the attachments, and the cases.

The trial court then noted that it was being asked to consider procedural and substantive unconscionability issues. It noted that Fisher relied upon *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77 [7 Cal.Rptr.3d 267]; it asked DCH why that case did not control. DCH admitted that, based on the declaration submitted with the opposition, procedural unconscionability had been shown, but it contended that the declaration contained inadmissible conclusions. DCH argued that the declarations from Colson and Pavlik showed the facts of this case differed greatly from the case cited by Fisher. The arbitration clause appeared on the back side of the RISC in bold type and surrounded by a box. DCH argued there was no procedural unconscionability. Fisher could buy the Neon anywhere, and DCH had an alternative sales contract without the arbitration waiver if she had requested it. DCH argued it was an arm's length transaction between the consumer and retailer.

Fisher argued that she had no opportunity to negotiate the preprinted sections of the contract. Pavlik did not declare that he spoke specifically with Fisher about the arbitration clause.

The trial court then addressed substantive unconscionability in that Fisher had no right to appeal an arbitration award under the clause unless she received an award of no money. Fisher would have the right to appeal if there was a court action. Further, even if the consumer wanted to choose filing the case in court, DCH could veto that decision and require arbitration. The provision also specifically referred to injunctive relief, which would only apply to DCH, not to Fisher. Fisher argued that injunctive relief was not subject to arbitration, so the clause seemed inconsistent with California law. DCH could not exercise its right to appeal unless the award was over $100,000.

The parties then asked to discuss the classwide arbitration and class action lawsuit waiver. Fisher argued that she could not be asked to waive her rights

under the CLRA, and she had a right to file a class action lawsuit under the CLRA. Fisher then pointed the trial court to the fact that, according to the terms of the RISC, if the class action waiver was unenforceable, the entire arbitration clause was unenforceable. DCH relied upon the two federal cases, discussed *post*, in arguing that the FAA preempted the CLRA. The trial court advised the parties that it was going to look at the cases and would issue a notice of ruling.

A minute order was issued on February 2, 2009, stating, "The Petition to Compel Binding Contractual Arbitration heard is denied." There was no ruling on the evidentiary objections. DCH filed a notice of appeal on February 23, 2009, and an amended notice of appeal on February 26, 2009.

On March 5, 2010, the CNCDA filed its application for leave to file a brief of amicus curiae and its brief. This court granted its request. On March 24, 2010, Fisher filed her answer to the amicus curiae brief.

II

PREEMPTION OF THE CLRA BY THE FAA

DCH argued in its opening brief that the FAA preempted California law in the determination of the enforceability of the arbitration clause. Fisher responded that the class action waiver in DCH's arbitration clause violates the antiwaiver provision contained in the CLRA and is not preempted by the FAA. Accordingly, Fisher could not agree to waive her right to bring a class action lawsuit or request classwide arbitration under the CLRA.

As alluded to, *ante*, the RISC (both the first and the second) signed by both parties contains a "poison pill" provision. It states, "If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration clause shall be unenforceable." Hence, we consider if Fisher's waiver of her right to file a class action lawsuit or submit to classwide arbitration under the CLRA was proper first; if we find that she could not waive these rights, then the entire arbitration clause is unenforceable. (See *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 468 [64 Cal.Rptr.3d 773, 165 P.3d 556] ["[t]he question whether an arbitration agreement has been validly formed is of course different from whether that agreement was unconscionable"].)

## A. *Standard of Review*

■ "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense. [Citation.]" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [58 Cal.Rptr.2d 875, 926 P.2d 1061]; accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903]; *Olvera v. El Pollo Loco, Inc.* (2009) 173 Cal.App.4th 447, 453 [93 Cal.Rptr.3d 65].)

"Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony." (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 [55 Cal.Rptr.3d 823].) The de novo standard of review applies only where the trial court's denial of a petition to arbitrate presents a pure question of law. (See *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567 [98 Cal.Rptr.3d 743]; *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547].)

In the instant case, the trial court did not state the reasons upon which it reached its decision to deny DCH's petition to compel arbitration. It was presented with several theories upon which the arbitration clause could have been invalidated, including that it required a waiver of Fisher's right to request classwide arbitration or file a class action lawsuit under the CLRA and/or that it was unconscionable. We have no way of knowing on what theory the trial court relied in reaching its decision.

Here, it is undisputed that the RISC signed by Fisher included an arbitration clause, and that clause included a waiver of her class action rights. Since we resolve the instant case on this ground—a purely legal issue—we review the claim de novo.

## B. *FAA Preemption*

■ "California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of

arbitrability [citation] . . . ." (*Engalla v. Permanente Medical Group, Inc., supra*, 15 Cal.4th at pp. 971–972.)

■ Civil Code section 1781, subdivision (a) provides that "[a]ny consumer entitled to bring an action under Section 1780 [an individual consumer claim] may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780." The CLRA applies to any contract "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." (Civ. Code, § 1770, subd. (a).) Civil Code section 1751 states, "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." (See also *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11 [108 Cal.Rptr.2d 699].) The complaint alleged (on behalf of both the class and Fisher) that DCH engaged in deceptive practices as defined in Civil Code section 1770, subdivision (a). Hence, under the CLRA, Fisher could not be asked to waive her right to file a class action lawsuit or request classwide arbitration.

■ The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2; see also *Perry v. Thomas* (1987) 482 U.S. 483, 492, fn. 9 [96 L.Ed.2d 426, 107 S.Ct. 2520].) With the enactment of the FAA, ". . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.' " (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [134 L.Ed.2d 902, 116 S.Ct. 1652].)

The issue to be decided here is whether the waiver of a state statutory right under the CLRA constitutes a ground that exists at law or in equity for the revocation of any contract. We have found no California case that directly addresses the issue. The Ninth Circuit Court of Appeals has found that the FAA preempts the CLRA.

In *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1147, the Ninth Circuit examined (in the context of cellular telephone contracts) an agreement that included an arbitration clause that barred class action lawsuits. (*Id.* at p. 1130.) It first noted, "The FAA makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of *any contract.*' [Citation.] With the enactment of the FAA, 'Congress precluded states from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed "upon the same footing as other contracts." ' [Citation.] Under § 2, however, state law is not entirely displaced from federal arbitration analysis. . . . '[A]s long as state law defenses concerning the validity, revocability, and enforceability of contracts are *generally applied* to all contracts, and not limited to arbitration clauses, federal courts may enforce them under the FAA.' [Citations.]" (*Id.* at pp. 1147–1148.)

The Ninth Circuit then noted that the CLRA applies only to individual consumers who purchase or lease any goods or services and not to any other type of contract or government purchases. (*Ting v. AT&T, supra,* 319 F.3d at p. 1148.) It then concluded, "Because the CLRA applies to such a limited set of transactions, we conclude that it is not a law of 'general applicability.' [Citations.]" (*Ibid.*)

■ After *Ting,* the California Supreme Court decided *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100]. In *Discover Bank,* the Supreme Court refused to invoke a blanket policy that class action waivers are invalid as a matter of law. (*Id.* at pp. 162–163.) "We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' [Citation.] Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Ibid.*)

Prior to reaching this decision on unconscionability, however, the court stated, "[W]e note that plaintiff does not plead a CLRA cause of action and so does not invoke its antiwaiver provision; nor does he seek recovery under any other California statute as to which a class action remedy is essential. [Citation.] Rather, plaintiff contends that class action or arbitration waivers in consumer contracts, and in this particular contract, should be invalidated as unconscionable under California law." (*Discover Bank v. Superior Court, supra,* 36 Cal.4th at p. 160, fn. omitted.)

The *Discover Bank* court then addressed preemption as it pertained to unconscionability. "At the outset of our discussion, we note that the FAA is silent on the matter of class actions and class action arbitration. Indeed, not only is classwide arbitration a relatively recent development, but class action litigation for damages was for the most part unknown in federal jurisdictions at the time the FAA was enacted in 1925. [Citation.] The Congress that enacted the FAA therefore cannot be said to have contemplated the issues before us. Accordingly, our conclusions with respect to FAA preemption must come from the United States Supreme Court's articulation of general principles regarding such preemption." (*Discover Bank v. Superior Court, supra,* 36 Cal.4th at pp. 163–164, fn. omitted.)

It then went on to hold, "Nothing in . . . any . . . Supreme Court case, however, suggests that state courts are obliged to enforce contractual terms even if those terms are found to be unconscionable or contrary to public policy under general contract law principles. As discussed, section 2 of the FAA and cases interpreting it make clear that state courts have no such obligation. Agreements to arbitrate may not be used to 'harbor terms, conditions and practices' that undermine public policy. [Citation.]" (*Discover Bank v. Superior Court, supra,* 36 Cal.4th at p. 166.)

In *Gutierrez v. Autowest, Inc., supra,* 114 Cal.App.4th 77, the appellate court addressed a case in which a dealership advertised a lease price for a car with " 'zero down.' " (*Id.* at p. 83.) Although the case did not involve the waiver of class action rights, it is instructive. When the buyer went to the dealership, he was told the advertised lease price was only applicable if a large downpayment was made. (*Ibid.*) The lease agreement included an arbitration clause on the back of the contract. (*Id.* at p. 84.) The buyer of the car initiated a lawsuit alleging, among other things, causes of action for fraud and negligent misrepresentation under the CLRA. (*Gutierrez,* at pp. 84–85.) In opposition to the dealership's motion to compel arbitration, the buyer alleged that the arbitration agreement should not be enforced because, among other reasons, "the arbitral forum fees exceeded their ability to pay." (*Id.* at p. 85.)

The court in *Gutierrez* stated, "Any analysis of the enforceability of an arbitration clause properly begins with a discussion of the [FAA] [citation], and its preemptive effect on state laws that impair the enforceability of agreements to arbitrate." (*Gutierrez v. Autowest, Inc., supra,* 114 Cal.App.4th at pp. 85–86, fn. omitted.) It noted, " '[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts.' [Citation.]" (*Id.* at p. 86.)

It then went on to address the two ways the arbitration agreement could be invalidated: (1) "[W]e consider whether the fee provision is unconscionable, a defense available to any consumer, regardless of the type of claim being arbitrated"; and (2) [W]e decide whether the arbitration clause constitutes a private agreement impairing the exercise of unwaivable *statutory* rights enacted for a public purpose. [Citation.]" (*Gutierrez v. Autowest, Inc., supra*, 114 Cal.App.4th at p. 86.)

The *Gutierrez* court stated, "Thus, a mandatory arbitration agreement cannot undercut unwaivable state statutory rights by, for example, eliminating certain statutory remedies or by erecting excessive cost barriers. [Citation.] Refusing to enforce such agreements is simply an application of 'general state law contract principles regarding the unwaivability of public rights to the unique context of arbitration, and accordingly [is] not preempted by the FAA.' [Citation.]" (*Gutierrez v. Autowest, Inc., supra*, 114 Cal.App.4th at p. 95.) It concluded, "In their complaint, plaintiffs rely on the CLRA . . . , consumer protection statutes enacted for a public purpose and providing certain unwaivable rights. Thus, plaintiffs are entitled to contest the arbitration clause on the basis that it is a private agreement in contravention of public rights—a separate, generally available contract defense not preempted by the FAA." (*Ibid.*, fns. omitted.)

Later cases support the finding in *Gutierrez*. In *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 854 [98 Cal.Rptr.3d 300], the court noted, "[*Gutierrez*] recognized that the CLRA . . . confer[s] unwaivable statutory rights . . . ." In *America Online, Inc. v. Superior Court, supra*, 90 Cal.App.4th 1 (a case which involved consumers who were being charged monthly services fees even after their subscriptions had expired), the plaintiffs filed a class action lawsuit alleging violations of the CLRA, but there was a choice-of-law provision that did not permit class action lawsuits in the state chosen to litigate the contract. (*America Online*, at p. 4.) The *America Online* court concluded that the forum-selection and choice-of-law provisions were unenforceable. (*Id.* at pp. 17–18.) The court concluded, "The unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the . . . forum selection clause." (*Id.* at p. 18.) Relevant here, the *America Online* court concluded that the CLRA class action remedy furthered a "strong public policy of th[e] state." (*America Online*, at p. 15.) Finally, in *Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 588, footnote 10 [61 Cal.Rptr.3d 344], the court noted, "Arguably, the CLRA's nonwaiver provision, Civil Code section 1751, provides an independent basis for affirming denial of the motion to compel arbitration. [Citations.]"

DCH has relied upon *Omstead v. Dell, Inc.* (N.D.Cal. 2008) 533 F.Supp.2d 1012, 1036 to support its claim of preemption based on that court's reliance on *Ting* that the FAA preempts the CLRA. However, that case was overruled by the Ninth Circuit Court of Appeals in *Omstead v. Dell, Inc.* (9th Cir. 2010) 594 F.3d 1081 (*Omstead II*). The Ninth Circuit did not discuss the CLRA or *Ting*, but rather concluded that the arbitration clause was unconscionable. (*Omstead II*, at pp. 1086–1087.)

We believe the reasoning in *Gutierrez* is sound. The arbitration clause at issue here required Fisher to waive an unwaivable statutory right under the CLRA to bring a classwide arbitration or class action lawsuit, which violates the public policy underlying these rights. This qualifies as a private agreement in contravention of public rights. DCH has never argued that the CLRA does not further a strong public policy of California; regardless, such argument would not be successful. (*D.C. v. Harvard-Westlake School, supra,* 176 Cal.App.4th at p. 854.)

■ We do not believe the *Ting* court properly analyzed the issue. "In California, private contracts that violate public policy are unenforceable." (*Gutierrez v. Autowest, Inc., supra,* 114 Cal.App.4th at p. 94.) This is a generally available contract defense. Further, under California law, the waiver of a class action right under the CLRA is not restricted to only arbitration agreements. Rather, it applies to all contracts. As previously stated, " '[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts.' [Citation.]" (*Gutierrez,* at p. 86.) Further, the United States Supreme Court has stated that "[a] court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." (*Perry v. Thomas, supra,* 482 U.S. at p. 492, fn. 9.) Here, if DCH had not included an arbitration agreement in the RISC, Fisher could still not be asked to waive her right to file a class action lawsuit or classwide arbitration if she pleaded a CLRA violation. The right to bring a class action lawsuit, an unwaivable statutory right under the CLRA, is "a separate, generally available contract defense not preempted by the FAA." (*Gutierrez,* at p. 95.)

We note that the amicus curiae brief filed by the CNCDA does not address whether the FAA preempts the CLRA. It only suggests that the trial court erred because this case is unlike prior cases involving waiver of class action rights for employment issues, claims that Fisher failed to show procedural or substantive unconscionability, and criticizes the causes of action for injunctive relief. However, as aptly noted in Fisher's answer, if this court resolves that the class action waiver is unenforceable, we need not address the other

issues, as the RISC contained a "poison pill" provision. The amicus curiae brief does not help in the resolution of the instant issue.

■ We also believe the purpose of the FAA would not be furthered by finding the waiver of classwide arbitration was enforceable in order to save the arbitration of Fisher's individual claims. The FAA encourages arbitration and does not foreclose classwide arbitration. (See *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42, 51 [78 Cal.Rptr.2d 779].) As noted by our Supreme Court, "*some* arbitration agreements and proceedings may harbor terms, conditions and practices that undermine the vindication of unwaivable rights." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1079 [130 Cal.Rptr.2d 892, 63 P.3d 979].) The arbitration clause here "harbors" the waiver of classwide arbitration and class action lawsuits, which undermines Fisher's unwaivable rights and also actually discourages arbitration.

Further, as stated by the court in *Discover Bank*, "[w]e continue to believe that the alternatives—either not enforcing arbitration agreements and requiring class action litigation, or allowing arbitration agreements to be used as a means of completely inoculating parties against class liability—are unacceptable. Nothing in the FAA . . . requires us to reconsider that assessment." (*Discover Bank v. Superior Court, supra*, 36 Cal.4th at p. 172, fn. omitted.)

At oral argument, DCH cited to the recent case of *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825 [109 Cal.Rptr.3d 289]. That case involved not the CLRA, but an ASFA (Civ. Code, § 2981 et seq.) violation for lack of proper notice for repossession of a vehicle. (*Arguelles-Romero*, at pp. 829–831.) The plaintiffs there sought a class action lawsuit on the ground that the notice was deficient for all buyers. However, the sales contract had included a waiver of the right to bring a class action lawsuit or classwide arbitration. The trial court enforced the waiver under *Discover Bank v. Superior Court, supra*, 36 Cal.4th 148, finding that no substantive unconscionability had been shown. (*Arguelles-Romero*, at p. 835.)

On appeal, the appellate court affirmed the finding of unconscionability. However, it concluded that *Gentry v. Superior Court, supra*, 42 Cal.4th 443 provides for a separate and distinct test when there is a waiver of an unwaivable statutory right that does not require a finding of unconscionability. (*Arguelles-Romero v. Superior Court, supra*, 184 Cal.App.4th at pp. 836–837; see Civ. Code, § 2982.5, subd. (d)(6) [any waiver of rights under the ASFA is unenforceable].) The court concluded, "*Discover Bank* is based on unconscionability . . . , while *Gentry* is based on whether a class arbitration (or action) is a significantly more effective practical means of vindicating unwaivable statutory rights . . . ." (*Arguelles-Romero*, at p. 841.) It then remanded the case—because the issue was not addressed in the lower

court—for a determination of whether a class action lawsuit or arbitration was "a significantly more effective practical means of vindicating the non-waivable statutory rights," i.e. the ASFA claims. (*Arguelles-Romero*, at p. 842.)

DCH raised for the first time at oral argument that this court should remand this case to the lower court for a determination of whether a class action lawsuit is a more effective practical means to vindicate the CLRA claims in this case before determining that the class action waiver was improper and refusing to enforce the arbitration clause.

■ This issue was never argued below or in the briefing. Nonetheless, here the statutory language of the CLRA, unlike that of the ASFA, provides that a class action lawsuit is a proper means to vindicate CLRA rights. (Civ. Code, § 1781, subd. (a).) Further, the clear language of the CLRA does not allow a consumer to waive the provisions of the CLRA in advance, including the right to bring a class action. Since the plain language of the statute provides that a consumer "may" bring a class action if there is damage to other consumers similarly situated, he or she cannot be asked to waive this class action right in advance.[1] As noted above, this waiver violates a sound public policy. ■ We are bound by the statutory language.

The manner in which the contract was written in this case gives the appearance that the class action waiver was included in the arbitration agreement in order to force Fisher to waive her statutory rights, and DCH could be protected by arguing that the FAA preempted the CLRA because the waiver was included in the arbitration agreement. This is the type of arbitration agreement criticized in *Little v. Auto Stiegler, Inc., supra*, 29 Cal.4th at page 1079 for hiding these types of waivers of unwaivable rights.

■ Our hands are tied as to ordering arbitration of any of Fisher's individual claims in the agreement. It was DCH that chose to put the classwide arbitration and class action lawsuit waiver in the arbitration agreement and then included the "poison pill" provision that invalidated the remainder of the arbitration agreement if the classwide arbitration waiver was unenforceable. We cannot sever the offending class action waiver, as we are bound by the language of the contract. We therefore affirm the trial court's ruling denying DCH's petition to compel arbitration.

---

[1] Although we express no opinion as to the certification of the class upon remand, we note that our colleagues in Division One recently found that backdating of financing contracts is a proper CLRA claim. (*Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1023–1024 [112 Cal.Rptr.3d 607].)

## III

## DISPOSITION

The trial court's order denying the petition to compel arbitration is affirmed. Fisher shall recover costs on appeal.

Hollenhorst, Acting P. J., and McKinster, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 1, 2010, S186618.