Filed 4/17/14  Gillespie v. Svale Del Grande CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SUZANNE GILLESPIE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SVALE DEL GRANDE, INC., et al.,<br><br>    Defendants and Appellants. | H039428<br>(Santa Clara County<br>Super. Ct. No. CV233338) |

## I.  INTRODUCTION

Plaintiff Suzanne Gillespie filed a putative class action complaint alleging consumer-related claims against defendant Svale Del Grande, Inc., doing business as Nissan Sunnyvale, and defendant Bank of the West.  Defendants filed a petition to compel arbitration based on an arbitration clause in the sale contract for the vehicle Gillespie purchased from the car dealership.  The trial court denied the petition.  The court determined that a class action waiver in the arbitration clause was enforceable, but that four other provisions in the arbitration clause were unconscionable.  After finding the arbitration clause was permeated with unconscionability, the court refused to sever the unconscionable provisions and simply declined to enforce the entire arbitration clause.  On appeal, defendants contend that the arbitration clause is not unconscionable and that the class action waiver contained in the arbitration clause is enforceable.

For the reasons stated below, we conclude that the class action waiver is enforceable but that three other provisions in the arbitration clause are unconscionable. We will reverse the trial court's order denying the petition to compel arbitration, and remand the matter to the trial court for the limited purpose of determining whether to sever the three unconscionable provisions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Complaint*

In October 2012, Gillespie filed a putative class action complaint against defendants. According to the complaint, Gillespie entered into a Retail Installment Sale Contract with Nissan Sunnyvale for the purchase of a used vehicle. After mutually agreeing to rescind the contract four days later, Gillespie and the car dealership entered into a second Retail Installment Sale Contract for the same vehicle but with a lower loan rate. The car dealership allegedly backdated the second contract to the date of the first contract which resulted in "undisclosed and illegal finance charges." The car dealership also allegedly charged a statutory fee for new tires although the vehicle Gillespie purchased had used tires, charged an optional California Department of Motor Vehicles (DMV) electronic filing fee for registration without asking Gillespie if she wanted to pay it, and committed other "violations of law," including making misrepresentations about an extended warranty and failing to provide the required disclosures regarding her credit scores. After Gillespie purchased the vehicle, the sale contract was assigned to defendant Bank of the West.

Gillespie alleges 11 causes of action against the car dealership and the bank, including causes of action for violations of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), the Automobile Sales Finance Act (Civ. Code, § 2981 et seq.), the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), the Vehicle Code, and Public Resources Code section 42885. Gillespie also alleges some of the causes of action on behalf of the following classes: (1) individuals whose contract was backdated,

2

(2) individuals who were charged a tire fee for used tires, and (3) individuals who were automatically charged an optional DMV electronic filing fee. Gillespie seeks declaratory relief, injunctive relief, actual damages, statutory damages, punitive damages, rescission of the purchase contract, and restitution, among other relief.

**B.** *The Petition to Compel Arbitration*

In November 2012, defendants filed a petition to compel arbitration. Defendants contended that both contracts signed by Gillespie contained an identical agreement to arbitrate, that Gillespie's dispute was subject to arbitration, and that the arbitration agreement was not unconscionable. Defendants also argued that Gillespie had waived her class claims pursuant to the arbitration agreement.

In support of the petition, defendants provided a declaration from Anthony Corini, the Nissan Sunnyvale finance and insurance manager involved in the transaction with Gillespie. Corini stated that it was his "custom and practice" in going over a sale contract with a customer to "emphasize each place the customer has to sign and point out the important terms," including "where the customer signs below where it" states that an arbitration clause is on the reverse side. Corini further stated that he did not recall Gillespie asking for more time to read either contract, and that if she had, he would have provided her with more time, based on his custom and practice. He also did not recall Gillespie asking any questions about the terms of the second contract.

**1. The Retail Installment Sale Contracts**

The two contracts that Gillespie signed are preprinted "Reynolds & Reynolds, 553-CA-ARB" forms that contains blank spaces for, among other things, the make and model of the vehicle being purchased, the price of the vehicle, the amount financed, and the annual percentage rate. Gillespie appears to have signed her name in at least seven places on the front side of the forms. Near the bottom of the front side of the form, above and to the right of Gillespie's last signature, is the following statement: "YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU

3

SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.  YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW.  YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.”

## 2.  The arbitration clause

On the back of each contract, in a box near the bottom of the page, is the following:

“**ARBITRATION CLAUSE**

“**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

“1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

“2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

“3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

“Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship

4

with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum . . . (www.arb-forum.com), the American Arbitration Association . . . (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

"Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. . . . We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be *final and binding* on all parties, *except that in the event the arbitrator's award* for a party is $0 or *against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs*. Any arbitration under this Arbitration Clause shall be governed

by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

"You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction . . . . If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable." (Italics added.)

### C. *Opposition to the Petition to Compel Arbitration*

In opposition, Gillespie contended that the arbitration clause was unenforceable. She argued that the class action waiver was illegal under the CLRA and therefore the arbitration clause, by its own terms, was also unenforceable. She further argued that the arbitration clause was unconscionable.

Gillespie filed a supporting declaration and a declaration from counsel. In her own declaration, Gillespie stated that when she signed both contracts, she was presented with a "stack" of documents, told where to sign or initial, was not "given an opportunity to read all of the documents in full," was not "given an opportunity to negotiate any of the pre-printed terms," and "felt pressured to sign and initial the [contracts] quickly." According to Gillespie, the documents were presented on a "take-it-or-leave-it" basis and she thought only the pricing terms were negotiable. No one at the dealership turned over the contract to show her the writing on the back, and she was not told there were terms on the back before she signed it. She was not aware the contracts included an arbitration clause prior to contacting attorneys about her dispute. Gillespie also did not know that there was a clause stating that she had read the entire contract, and she had not read the entire document. Gillespie stated that she had no reason to think an arbitration clause was part of purchasing a car, and that had she been aware of the nature and scope of the

arbitration clause in the contract, she would not have agreed to that provision in order to purchase a car. Gillespie further stated that she did not receive a copy of any proposed rules for arbitration.

Gillespie's counsel stated in a declaration that he had previously handled a case that went to arbitration at JAMS. The consumer received a "$0 award and invoked the arbitration clause's 'new arbitration' provision. The bill to conduct the one-day, three-person arbitration (which ended up not proceeding because the case settled) was $22,050," which included arbitrator fees, a case management fee, and retainers for the three arbitrators.

### D. *Reply in Support of the Petition to Compel Arbitration*

In their reply brief, defendants contended that procedural unconscionability was "minimal" with respect to the arbitration clause, and that Gillespie could not establish substantive unconscionability. Defendants also argued that the class action waiver was not unconscionable because the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) preempted the CLRA in this regard.

### E. *The Trial Court's Order*

A hearing was held on defendants' petition to compel arbitration. Subsequently, on February 25, 2013, the trial court filed an order denying the petition. The court determined that, "even if the class action waiver is unenforceable under the CLRA's antiwaiver provision, . . . that state law provision is preempted by the FAA because it disfavors arbitration."

Regarding unconscionability of the arbitration clause, the trial court determined that "the record support[ed] a moderate showing of procedural unconscionability." The court explained that the arbitration clause was on the back of a "densely-worded" contract, the clause was not called to Gillespie's attention, and during each signing Gillespie was presented with a stack of pre-printed forms and told to sign or initial them without an adequate opportunity to read them in full. Further, although there was a four-

7

day interval between the signing of the two contracts, Gillespie "had already entered into the first [contract] as of October 23, 2010 in a process she describes as rushed and lacking the opportunity to fully read the documents." The court also observed that Gillespie was not provided with a copy of the arbitration rules.

Regarding substantive unconscionability, the trial court determined that the provisions allowing for a second arbitration if the first resulted in an injunction or an award in excess of $100,000, requiring the party seeking the second arbitration to pay for the arbitration costs subject to later apportionment, and exempting from arbitration self-help remedies such as repossession, unfairly benefitted the dealership. The court concluded that the arbitration clause was "permeated with unconscionability" and declined to enforce the remainder of the arbitration clause.

### III. DISCUSSION

On appeal, defendants contend that the trial court erred in denying their petition to compel arbitration. They argue that the arbitration clause has "minimal" procedural unconscionability, that it is not substantively unconscionable, and that it is therefore enforceable. Defendants also contend that the class action waiver in the arbitration clause is enforceable.

Gillespie contends that the arbitration clause is both procedurally and substantively unconscionable, and that the entire arbitration clause is unenforceable. She also argues that the class action waiver in the arbitration clause violates California law and, pursuant to a "poison pill" provision in the arbitration clause, the entire arbitration clause is unenforceable.

The form sale contract used by the car dealership in this case is apparently used by other car dealerships throughout California. Although several appellate opinions have addressed whether the arbitration clause contained within the form sale contract is unconscionable and/or whether the class waiver is proper, the California Supreme Court has granted review in these cases. (*Sanchez v. Valencia Holding Co., LLC* (2011) 201

8

Cal.App.4th 74 [unconscionable arbitration clause] (*Sanchez*), review granted Mar. 21, 2012, S199119; *Caron v. Mercedes-Benz Financial Services USA LLC* (2012) 208 Cal.App.4th 7 [class action waiver permissible], review granted Oct. 24, 2012, S205263, further action deferred pursuant to Cal. Rules of Court, rule 8.512(d)(2)[1]; *Goodridge v. KDF Automotive Group, Inc.* (2012) 209 Cal.App.4th 325 [unconscionable arbitration clause], review granted Dec. 19, 2012, S206153, further action deferred pursuant to rule 8.512(d)(2); *Flores v. West Covina Auto Group* (2013) 212 Cal.App.4th 895 [arbitration clause not unconscionable; class action waiver permissible], review granted Apr. 10, 2013, S208716, further action deferred pursuant to rule 8.512(d)(2); *Natalini v. Import Motors, Inc.* (2013) 213 Cal.App.4th 587 [unconscionable arbitration clause], review granted May 1, 2013, S209324, further action deferred pursuant to rule 8.512(d)(2); *Vasquez v. Greene Motors, Inc.* (2013) 214 Cal.App.4th 1172 [arbitration clause not unconscionable; class action waiver permissible], review granted June 26, 2013, S210439, further action deferred pursuant to rule 8.512(d)(2); *Vargas v. SAI Monrovia B, Inc.* (2013) 216 Cal.App.4th 1269 [unconscionable arbitration clause], review granted Aug. 21, 2013, S212033, further action deferred pursuant to rule 8.512(d)(2).)

In this case, we first address whether the class waiver is enforceable before determining whether the arbitration clause is unconscionable.

**A.** *Class Waiver*

The parties' arbitration clause provides the following with respect to the car buyer's waiver of the right to bring a class claim: "If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us including any right to class arbitration or any consolidation of individual arbitrations. [¶] . . . [¶] . . . Any claim or dispute is to be arbitrated by a

---

[1] All further references to rules are to the California Rules of Court.

9

single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. . . . [¶] . . . [¶] . . . If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable." (Capitalization omitted.)

Gillespie's complaint includes CLRA claims alleged on behalf of a class. The CLRA provides that a consumer is entitled to bring a class action to obtain relief. (Civ. Code, § 1781, subd. (a).) The CLRA further provides that any waiver of the provisions of the CLRA is contrary to public policy, unenforceable, and void. (*Id.*, § 1751.) Gillespie contends that the class waiver in the parties' arbitration clause is illegal and unenforceable under the CLRA, and that the "poison pill" provision in the arbitration clause applies and renders the remainder of the arbitration clause unenforceable. She further contends that the FAA does not preempt the CLRA's prohibition on class action waivers, and that even if preemption applies, the parties chose to have California law apply to their contract.

Defendants contend that the CLRA provision prohibiting a class waiver is preempted by federal law, and that the class waiver in the arbitration clause is enforceable.

In *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*), the defendant bank sought to compel arbitration of the plaintiff's contract and statutory claims on an individual basis and to dismiss class claims pursuant to a class action waiver in the parties' arbitration agreement. (*Id.* at p. 154.) The trial court determined that the class action waiver was unconscionable and unenforceable. (*Id.* at p. 155.) The California Supreme Court agreed that "some class action waivers in consumer contracts are unconscionable under California law." (*Id.* at p. 160.) Specifically, the California Supreme Court determined that "when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably

10

involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Id.* at pp. 162-163.)

The California Supreme Court further considered whether California law prohibiting class action waivers in arbitration agreements is preempted by the FAA. The court observed that section 2 of the FAA (9 U.S.C. § 2) allows state courts to refuse to enforce arbitration agreements based on general contract principles. (*Discover Bank*, *supra*, 36 Cal.4th at pp. 165, 167; see 9 U.S.C. § 2 [arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"].) With respect to class action waivers, the court reasoned that "the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally. In other words, it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements." (*Id.* at pp. 165-166.) The court further reasoned that "[n]othing in . . . any . . . Supreme Court case . . . suggests that state courts are obliged to enforce contractual terms even if those terms are found to be unconscionable or contrary to public policy under general contract law principles. As discussed, section 2 of the FAA and cases interpreting it make clear that state courts have no such obligation. Agreements to arbitrate may not be used to 'harbor terms, conditions and practices' that undermine public policy. [Citation.]" (*Id.* at p. 166.) In other words, "state courts may enforce general contract rules regarding

11

unconscionability and public policy that preclude class action waivers." (*Id.* at p. 171.) The court ultimately held that "the FAA does not prohibit a California court from refusing to enforce a class action waiver that is unconscionable." (*Id.* at p. 173.)

Thereafter, in *Fisher v. DCH Temecula Imports LLC* (2010) 187 Cal.App.4th 601 (*Fisher*), the Court of Appeal addressed a class action waiver under the CLRA. In Fisher, the plaintiff car buyer alleged class claims under the CLRA and other statutes. (*Fisher*, *supra*, at p. 606.) The defendant car dealership petitioned to compel arbitration. The trial court determined that the arbitration clause in the parties' retail installment sales contract, which included a class action waiver, was unenforceable. (*Id.* at p. 605.)

The Court of Appeal in *Fisher* affirmed the order denying the petition to compel arbitration. (*Fisher*, *supra*, 187 Cal.App.4th at p. 605.) The *Fisher* court relied on *Discover Bank* and *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77 (*Gutierrez*), among other authorities. In *Gutierrez*, the appellate court stated that "a mandatory arbitration agreement cannot undercut unwaivable state statutory rights by, for example, eliminating certain statutory remedies . . . . [Citation.] Refusing to enforce such agreements is simply an application of 'general state law contract principles regarding the unwaivability of public rights to the unique context of arbitration, and accordingly [is] not preempted by the FAA.' [Citation.]" (*Gutierrez*, *supra*, at p. 95.) The appellate court in *Gutierrez* further stated, "In their complaint, plaintiffs rely on the CLRA . . . , consumer protection statutes enacted for a public purpose and providing certain unwaivable rights. Thus, plaintiffs are entitled to contest the arbitration clause on the basis that it is a private agreement in contravention of public rights—a separate, generally available contract defense not preempted by the FAA." (*Ibid.*, fns. omitted.) The *Fisher* court stated: "[T]he reasoning in *Gutierrez* is sound. The arbitration clause at issue here required [the plaintiff car buyer] to waive an unwaivable statutory right under the CLRA to bring a classwide arbitration or class action lawsuit, which violates the public policy underlying these rights. This qualifies as a private agreement in contravention of public

12

rights." (*Fisher*, *supra*, at p. 617.) The Court of Appeal in *Fisher* ultimately concluded that "[t]he right to bring a class action lawsuit, an unwaivable statutory right under the CLRA, is 'a separate, generally available contract defense not preempted by the FAA.' [Citation.]" (*Ibid.*)

Subsequently, in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740, 179 L.Ed. 2d 742] (*Concepcion*), the United States Supreme Court held that the *Discover Bank* rule, which classified certain class arbitration waivers in consumer contracts as unconscionable, was preempted by the FAA. (*Concepcion*, *supra*, 131 S.Ct. at pp. 1746, 1753.) The Supreme Court explained that under the FAA, "courts must place arbitration agreements on an equal footing with other contracts [citation] and enforce them according to their terms [citation]." (*Id.* at pp. 1745-1746.) However, the "saving clause" of section 2 of the FAA (9 U.S.C. § 2), which "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract,' " "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. [Citations.]" (*Concepcion*, *supra*, 131 S.Ct. at p. 1746.) The Supreme Court observed that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. [Citation.] But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration. . . . [T]he FAA's preemptive effect might extend even to grounds traditionally thought to exist ' "at law or in equity for the revocation of any contract." ' [Citation.] . . . [A] court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would

13

enable the court to effect what . . . the state legislature cannot.' [Citation.]" (*Id.* at p. 1747)

The *Concepcion* court explained that "[a]n obvious illustration of this point would be a case finding unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery. The rationalizations for such a holding are neither difficult to imagine nor different in kind from those articulated in *Discover Bank*. A court might reason that no consumer would knowingly waive his right to full discovery, as this would enable companies to hide their wrongdoing. Or the court might simply say that such agreements are exculpatory-- restricting discovery would be of greater benefit to the company than the consumer, since the former is more likely to be sued than to sue. See *Discover Bank*, *supra*, [36 Cal.4th at p.] 161 (arguing that class waivers are similarly one-sided). And, the reasoning would continue, because such a rule applies the general principle of unconscionability or public- policy disapproval of exculpatory agreements, it is applicable to 'any' contract and thus preserved by § 2 of the FAA. In practice, of course, the rule would have a disproportionate impact on arbitration agreements; but it would presumably apply to contracts purporting to restrict discovery in litigation as well." (*Concepcion*, *supra*, 131 S.Ct. at p. 1747.)

The Supreme Court determined that the *Discover Bank* rule stood " 'as an obstacle to the accomplishment and execution of the full purposes and objectives of [the FAA].' " (*Concepcion*, *supra*, 131 S.Ct. at p. 1753.) The Court explained that "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Id.* at p. 1748.) The Court observed that based on the FAA, the Court had previously held that "parties may agree to limit the issues subject to arbitration, [citation], to arbitrate according to specific rules, [citation], and to limit

14

*with whom* a party will arbitrate its disputes, [citation]." (*Concepcion*, *supra*, 131 S.Ct. at pp. 1748-1749.) The Court explained that "[t]he point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures . . . . And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." (*Id.* at p. 1749.)

According to the Supreme Court, the *Discover Bank* rule " 'interferes' with arbitration." (*Concepcion*, *supra*, 131 S.Ct. at p. 1750.) The rule essentially allows consumers to "demand [classwide arbitration] *ex post*." (*Ibid.*) Such "class arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA." (*Id.* at p. 1751.) Among other things, "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration--its informality--and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." (*Ibid.*) The Supreme Court further stated that "[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." (*Id.* at p. 1753.)

In *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic-Calabasas*), petition for certiorari pending, petition filed January 15, 2014, No.13-856, the California Supreme Court discussed the import of *Concepcion*. "What is new is that *Concepcion* clarifies the limits the FAA places on state unconscionability rules as they pertain to arbitration agreements. It is well established that such rules must not facially discriminate against arbitration and must be enforced evenhandedly. *Concepcion* goes further to make clear that such rules, even when facially nondiscriminatory, must not disfavor arbitration *as applied* by imposing procedural requirements that 'interfere[] with fundamental attributes of arbitration,' especially its ' "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." [Citation.]' [Citation.] As the high court explained, if facial neutrality or evenhanded enforcement were the only principles limiting the scope of permissible state law defenses

15

to arbitration, then a state court could—on grounds of unconscionability or public policy—compel the adoption of an arbitration procedure that would be arbitration in name only.  It could impose judicially monitored discovery, evidentiary rules, jury trials, or other procedures that mimic court proceedings, and thereby undermine the FAA's purpose of encouraging arbitration as an efficient alternative to litigation.  [Citation.]" (*Sonic-Calabasas*, *supra*, 57 Cal.4th at p. 1143.)  The California Supreme Court interpreted *Concepcion* as authority for the proposition that the FAA preempted "any state-law rule categorically forbidding waiver of formal discovery, jury factfinding, *class procedures*, or civil litigation generally."  (*Sonic-Calabasas*, *supra*, 57 Cal.4th at p. 1151, italics added.)

In this case, pursuant to *Concepcion*, *supra*, 131 S.Ct. 1740, we determine that the FAA preempts the CLRA's class action anti-waiver provision.  The CLRA's prohibition against class action waivers is similar to the *Discover Bank* rule that certain class arbitration waivers in consumer contracts are unconscionable.  Both are state law rules that prevent the enforcement of an arbitration agreement according to its terms.  The parties in this case, as in *Concepcion*, never agreed to classwide arbitration in their arbitration clause.  (*Id.* at p. 1744.)  Further, the limitation on class claims in the parties' arbitration clause helps to facilitate the benefits of arbitration, including " 'lower costs, greater efficiency and speed . . . .' " (*Id.* at p. 1751.)  Enforcing the CLRA's provision against a class action waiver would essentially allow consumers to demand classwide arbitration and entail complex, costly, and time-consuming arbitration procedures. (*Concepcion*, at pp. 1750-1751.)  Based on the reasoning in *Concepcion*, the CLRA's antiwaiver provision " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [the FAA]' " and thus we determine that the statutory provision is preempted by the FAA.  (*Concepcion*, *supra*, 131 S.Ct. at p. 1753.)

In an attempt to avoid preemption, Gillespie argues that under the parties' contract, they agreed to apply California law.  According to Gillespie, "this means the

16

parties exercised their right to contractually agree California law applies to the interpretation of the contract, even if it would have otherwise been preempted by the FAA." We are not persuaded by Gillespie's argument. The parties' contract provides generally that "[f]ederal law and California law apply to this contract." To the extent there is a conflict, the supremacy clause of the United States Constitution mandates that federal law preempts state law. (*Washington Mutual Bank v. Superior Court* (2002) 95 Cal.App.4th 606, 612.) We further observe that the arbitration clause specifically states that "[a]ny arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration." To the extent this provision governs the interpretation of the class waiver provisions at issue, the FAA and preemption are applicable.

In sum, the class waiver in the parties' arbitration clause is enforceable. Consequently, the "poison pill" provision, which states that if the class waiver "is . . . found to be unenforceable" then "the remainder of this Arbitration Clause shall be unenforceable," is not triggered. We next consider whether the parties' arbitration clause is unconscionable as to certain other provisions.

**B.** *Unconscionability*

**1. Legal Principles Regarding Unconscionability**

Under the FAA and the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.), an arbitration agreement may be found unenforceable based on grounds applicable to contracts generally, such as unconscionability. (*Concepcion*, *supra*, 131 S.Ct. at p. 1746; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*); Civ. Code § 1670.5, subd. (a).)

"Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55

17

Cal.4th 223, 246 (*Pinnacle*).) " ' "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." ' [Citation.]" (*Id.* at p. 247.) "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, ' "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' [Citation.]" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 (*Little*).)

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' [Citation.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 246; see *Little*, *supra*, 29 Cal.4th at p. 1071 [substantively unconscionable terms "may generally be described as unfairly one-sided"].)[2]

An unfairly one-sided agreement may not be unconscionable if there is a "reasonable justification for such one-sidedness based on 'business realities.' " (*Armendariz*, *supra*, 24 Cal.4th at p. 117.) "[A] contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable. [Citation.] However, unless the 'business realities' that create the special need for such an advantage are explained in the contract itself, . . . it must be factually established." (*Stirlen v.*

---

[2] In *Sonic-Calabasas*, *supra*, 57 Cal.4th 1109, the California Supreme Court observed that the test for substantive unconscionability has been "variously described." (*Id.* at p. 1145.) The court explained that "[a]ll of these formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party' [citation]." (*Ibid.*) In *Sanchez*, supra, 201 Cal.App.4th 74, review granted Mar. 21, 2012, S199119, the California Supreme Court has requested supplemental briefing regarding which formulation(s) should be used.

*Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1536.)  In the absence of reasonable justification, "arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing . . . advantage [of the party of superior bargaining strength]. Arbitration was not intended for this purpose."  (*Armendariz*, *supra*, at p. 118.)

"The party resisting arbitration bears the burden of proving unconscionability. [Citations.]  Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on ' "a sliding scale." '  [Citation.]  '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'  [Citation.]"  (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.)  A court may refuse to enforce a contract found "to have been unconscionable at the time it was made."  (Civ. Code § 1670.5, subd. (a).)

"On appeal from the denial of a motion to compel arbitration, '[u]nconscionability findings are reviewed de novo if they are based on declarations that raise "no meaningful factual disputes."  [Citation.]  However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence."  [Citation.]' "  (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 820-821 (*Lhotka*).)

## 2.  Procedural Unconscionability

Defendants concede that the parties' contract is a contract of adhesion but contend that there is "minimal procedural unconscionability arising solely out of its status as a contract of adhesion."  Defendants argue that Gillespie cannot establish a greater degree of procedural unconscionability because she cannot demonstrate surprise or oppression. Defendants contend that Gillespie possessed the first contract for four days before she signed the second contract and thus she could have read the terms "at her leisure for four

days," that there is no evidence she was prevented from reading either contract, and that she is bound by the terms of the arbitration clause even if she failed to read it before signing the contract. Defendants further contend that the formatting on the back of the contract sufficiently highlights the arbitration clause, and that the front of the contract contains an acknowledgment that the buyer has read the arbitration clause on the back. Defendants also argue that a preprinted contract is necessary to ensure that the terms comply with the law and are available in various languages as required by law.

Gillespie contends that there is a "strong showing" of procedural unconscionability. She argues that the parties' contract was a contract of adhesion. She also argues that the arbitration clause is hidden on the back of a dense, preprinted form. According to Gillespie, the dealership presented her with sale documents and told her where to sign, she was not given an opportunity to read all the documents in full, she felt pressured to sign the contracts quickly, she was not given any opportunity to negotiate any of the preprinted terms in the contract, and she was not informed that the contract contained an arbitration clause. Gillespie also contends that defendants' failure to provide a copy of the proposed arbitration rules supports a finding of procedural unconscionability.

Viewing the evidence in the light most favorable to the trial court's finding of procedural unconscionability, the record reflects the following concerning the formation and negotiation of the parties' contract.

Both parties agree that the contract is a contract of adhesion. The contract was presented by the dealership to Gillespie on a take it or leave it basis, without an opportunity to negotiate the preprinted terms.

Further, the contract is dense; each side of the contract contains numerous terms nearly two pages in length. The arbitration clause itself is located on the back side of the contract near the bottom. According to Gillespie's declaration, she was not given an opportunity to fully read all of the documents presented to her in a stack. She also was

20

not shown or told that there were terms, including an arbitration clause, on the back of the contract before she was directed where to sign on the front side. Although there is a provision near the bottom of the front side of the contract referring to the arbitration clause on the reverse side, Gillespie's nearest signature is not adjacent to that reference to the arbitration clause. Rather, Gillespie's nearest signature is below and to the left of that reference to arbitration and directly underneath another provision concerning a contract cancellation option. Above both these provisions is another provision in bold and larger font concerning the annual percentage rate. Thus, the reference on the front side of the contract to the arbitration clause was not prominent considering the surrounding text. To the extent the length, formatting, or content of some of the provisions in the contract are dictated by law, the arbitration clause itself would have been more apparent if the car buyer had been required to sign or initial the back side where the arbitration clause is located, or the specific paragraph on the front side that mentions the arbitration clause.

Gillespie had the first preprinted contract in her possession four days before she signed the second one. If she had conducted a detailed review of the first contract during that four-day timeframe, she might have discovered the arbitration clause on the back side. By that time, however, she was *already bound* by the terms of the first contract that included the *same arbitration clause* as the second contract. Gillespie's only choice upon returning to the dealership was to either continue under the first contract with an arbitration clause, or sign a nearly identical contract with the same arbitration clause but a lower annual percentage rate. She was not given an opportunity to negotiate the preprinted terms when she returned to sign the second contract.

Based on our review of the parties' contract and the circumstances surrounding the formation of the contract, including the lack of negotiation over the preprinted terms, we conclude that at least a moderate level of procedural unconscionability has been established by Gillespie. (See *Gutierrez*, *supra*, 114 Cal.App.4th at p. 89 [arbitration clause procedurally unconscionable where no opportunity to negotiate preprinted terms in

21

contract, contract presented on " 'take it or leave it' " basis, arbitration clause was inconspicuous in contract, and the plaintiff was not informed that contract contained arbitration clause]; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771,796 [in the absence of any other indication of oppression or surprise, adhesion agreement has a "low" degree of procedural unconscionability].)

The fact that Gillespie was not provided with a copy of any arbitration rules does not significantly alter our analysis. Although the arbitration clause identified the American Arbitration Association as a possible arbitration provider, the arbitration clause also left open the possibility that the parties would select a different, mutually agreeable arbitration provider in the future.

### 3. Substantive Unconscionability

Defendants contend that the arbitration clause is not substantively unconscionable. According to defendants, the arbitration clause requires arbitration costs to be borne primarily by the dealership, each party has the right to seek a second arbitration after an "outlier" or "rogue" award, the significance of injunctive relief against a dealership justifies the need to preserve the right to a second arbitration, the requirement that the appealing party pay the cost of the second arbitration applies to both parties, repossession may be conducted without judicial process so its exclusion from the arbitral forum maintains its status as an expeditious remedy, and either party may pursue small claims actions although that forum is of limited use to the dealership.

Gillespie contends that the arbitration clause is substantively unconscionable with respect to several provisions. She argues that the provision allowing for a second arbitration after an award in excess of $100,000 primarily and unjustifiably benefits the dealer. Similarly, the provision allowing a second arbitration after an award of injunctive relief is unduly harsh to the buyer. Further, the provision requiring the appealing party to pay the costs of the second arbitration in advance is unfair to the consumer in relation to a dealership with deep pockets. Moreover, the arbitration clause excludes claims a

22

dealership is likely to bring, such as those relating to repossession or falling within the jurisdiction of small claims court. Additionally, according to Gillespie, the consumer may be responsible for some or all of the costs for the initial arbitration, which is unfair and illegal; the class action waiver is one-sided and an illegal exculpatory clause; the CLRA allows a defendant to recover fees for a claim brought in bad faith, but this bad faith requirement would not apply in arbitration and thus places Gillespie at risk for defendants' fees even if she brought the claim in good faith; the National Arbitration Forum, which is referenced in the parties' arbitration clause, stopped arbitrating consumer matters prior to Gillespie signing the contract; defendants have "veto power" over the selection of an arbitrator; and arbitration is not mandatory under the arbitration clause except when defendants " 'choose' arbitration," which only occurs when a consumer brings a class action.

The trial court determined that the arbitration clause was substantively unconscionable based on the following provisions: (1) the exception to the rule that the arbitrator's award is final and allowing a second arbitration if the first award is "$0" or exceeds $100,000, (2) the exception to finality allowing a second arbitration if the first award includes injunctive relief, (3) the requirement that the appealing party pay the costs of the second arbitration subject to possible apportionment later, and (4) the exemption of self-help remedies such as repossession from the arbitration clause. As we will explain, in considering the first three provisions together, we determine that they are substantively unconscionable because they benefit the dealership, the party of superior bargaining strength, to the detriment of the weaker party, a consumer such as Gillespie, and operate contrary to an essential purpose of arbitration, which is to encourage efficient, speedy, and relatively inexpensive dispute resolution. (See *Concepcion*, *supra*, 131 S.Ct. at p. 1749; *Pinnacle*, *supra*, 55 Cal.4th at p. 235, fn. 4.) Given the broad exceptions to finality that generally favor only one party, the policy advantages of arbitration are diminished. Under the circumstances, we do not believe that Gillespie fairly agreed to an

23

arbitration procedure that allows for a second arbitration under the conditions set forth in the arbitration clause.

### a. *Second arbitration after an award exceeding $100,000*

The arbitration clause generally provides that the arbitrator's award is final and binding on all parties. An exception to this finality rule is the provision allowing a party to seek a new arbitration with a three-arbitrator panel if the award is zero or exceeds $100,000. Gillespie argues that although the provision appears neutral, it actually benefits the dealership. According to Gillespie, the dealership is more likely than her to suffer an adverse award in excess of $100,000, as she is obligated under the contract to make monthly payments for the car totaling significantly less than that amount. In comparison, the dealership faces substantial damages, including punitive damages, for the consumer claims.

Defendants contend that the provisions allowing for a second arbitration if the award is zero or exceeds $100,000 "balance each other out" and allow each party to seek a second arbitration after "an outlier award." Specifically, defendants argue that the plaintiff buyer is more likely to seek a second arbitration after an award of zero, while the defendant dealership is more likely to seek a second arbitration after an award exceeding $100,000, as that amount is "far greater than the value of most cars today." An award falling between those amounts is subject to finality, thus preserving "the economical and speedy nature of arbitration."

It is not readily apparent which party is more likely to initiate a claim, or which party is more likely to obtain an award of zero. Thus we cannot say that a provision allowing a second arbitration after a zero award favors one party over the other.

However, defendants do not dispute, and it appears more likely, that the dealership rather than the car buyer would suffer an adverse award in excess of $100,000 and thus utilize the right to a second arbitration. If a dealership sold a faulty vehicle, made a misrepresentation, or engaged in some other unfair business practice, an award exceeding

24

$100,000 is entirely feasible, given the availability of compensatory damages, punitive damages, and attorney's fees. (See e.g., Civ. Code, § 1780.) The dealership, and not a car buyer such as Gillespie, thus appears to benefit from the opportunity to seek a second arbitration after an award in excess of the $100,000 threshold.

In this context, we find *Little* instructive. In *Little*, the California Supreme Court concluded that a provision in an employment arbitration agreement was unconscionable where it allowed either party to appeal an arbitration award of more than $50,000 to a second arbitrator. (*Little*, *supra*, 29 Cal.4th at pp. 1068-1069.) The court determined that the provision was "unconscionably one-sided" because it prevented appeals of potentially substantial claims brought by a plaintiff where the arbitration award was below the $50,000 threshold. (*Id.* at p. 1074.) The court explained: "From a plaintiff's perspective, the decision to resort to arbitral appeal would be made not according to the amount of the arbitration award but the potential value of the arbitration claim compared to the costs of the appeal. If the plaintiff and his or her attorney estimate that the potential value of the claim is substantial, and the arbitrator rules that the plaintiff takes nothing because of its erroneous understanding of a point of law, then it is rational for the plaintiff to appeal. Thus, the $50,000 threshold inordinately benefits defendants. Given the fact that [the employer] was the party imposing the arbitration agreement and the $50,000 threshold, it is reasonable to conclude it imposed the threshold with the knowledge or belief that it would generally be the defendant. [¶] Although parties may justify an asymmetrical arbitration agreement when there is a 'legitimate commercial need' [citation], that need must be 'other than the employer's desire to maximize its advantage' in the arbitration process. [Citation.] There is no such justification for the $50,000 threshold." (*Id.* at p. 1073.)

Similarly, in the present case, if the car buyer obtains an arbitration award that is too low, or otherwise between zero and $100,000, the car buyer is not allowed to seek a second arbitration, no matter how substantial the potential value of the arbitration claim.

25

The dealership, however, is able to seek a second chance at avoiding liability it deems excessive—awards over $100,000. In sum, the provision allowing a second arbitration for an award in excess of $100,000 generally benefits only the dealership and not the car buyer.

### b. *Second arbitration after an award of injunctive relief*

The next exception to the finality rule is the provision allowing a second arbitration if the award "*includes . . .* injunctive relief." (Italics added.) Gillespie contends that the car buyer, not the dealership, would typically obtain injunctive relief, which is "an important tool for enforcing consumer rights."

Defendants argue that it will be difficult for a car buyer to make a proper showing for injunctive relief in a case without class claims, and therefore a second arbitration is important to the car dealership when such relief is granted. Defendants also contend that a dealership is more likely to obtain injunctive relief than the car buyer. Defendants further contend that because an injunction may have a substantial and continuing effect on a business, it is appropriate to preserve the right to a second arbitration after such an award.

We determine that this exception provides an advantage primarily to the dealership. Injunctive relief can be an essential remedy to protect consumers from further wrongful acts by a defendant. (See *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17, 20; *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103-108.) Under the arbitration clause, if a car buyer obtains an award of *any* amount, and that award *includes* injunctive relief, the dealership will have the ability to seek a second arbitration. Allowing for a second arbitration where injunctive relief is awarded will obviously delay any such relief eventually awarded for the protection of consumer car buyers, as well as impede the goals of arbitration in providing quick and efficient relief.

Defendants' assertion that it will be difficult for a car buyer to make a proper showing for injunctive relief in a case without class claims is speculative. Similarly,

defendants do not provide any support for their assertion that injunctive relief is more likely awarded against buyers than dealerships, and that injunctive relief is frequently awarded against buyers who avoid repossession by hiding their vehicles in a garage. Lastly, although an injunction against a business may be significant, the arbitration clause is structured such that a second arbitration is allowed primarily for those awards deemed significantly adverse to one party only—the dealership.

### c. *Costs for second arbitration*

The arbitration clause also provides that the "appealing party" seeking a new arbitration before a three-arbitrator panel "shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs." Under this provision, the appealing party is responsible for advancing the filing fee and costs of arbitration for *both* parties, including the three arbitrators' fees.

Gillespie's counsel stated in a declaration opposing the petition to compel arbitration that he had handled three cases that went to arbitration in 2007 and 2008 involving violations of the CLRA and the Automobile Sales Finance Act. The arbitrators' hourly fees were between $400 and $600 per hour. The arbitration for one of the cases was conducted by JAMS and resulted in a zero award for the consumer. The consumer sought a new arbitration under the arbitration clause. According to counsel, "[t]he bill to conduct the one-day, three-person arbitration (which ended up not proceeding because the case settled) was $22,050, reflecting $13,650 in arbitrator fees, $800 for a Case Management Fee, and $7,600 in retainers for the three arbitrators."

Gillespie argues that the cost provision "allows a dealership with deep pockets to appeal while effectively discouraging or possibly outright preventing a more cash-strapped consumer from doing so." Gillespie states that although a consumer may seek a waiver of arbitration fees and costs under Code of Civil Procedure section 1284.3, subdivision (b), "a consumer need not be indigent to feel crippled by the high costs of arbitration." She further contends that the CLRA and CAA limit the arbitration expenses

27

that a consumer may be required to pay, but the parties' arbitration agreement nevertheless requires the appealing party to advance the arbitral expenses for both parties, subject to reallocation at the end of the proceeding. Gillespie contends that reapportionment at the end of the proceeding is inadequate for consumers who cannot afford to initiate the appeal process. Moreover, the arbitration clause does not specify the amount that must be paid in advance, creating the possibility that a car buyer may have to advance "unaffordable expenses without any effective avenue of relief," which may discourage a buyer from pursuing a second arbitration.

Defendants argue that the cost provision is fair because it applies to any party that appeals, and is "no different" than the judicial forum "where the appealing party must advance costs." Defendants further argue that by requiring significant upfront costs, the provision discourages disappointed parties from appealing, which promotes finality. It also limits the financial impact of a second arbitration on the nonappealing party. Moreover, it creates a disincentive to a disgruntled party who might appeal in order to force the other party to settle solely to avoid incurring additional fees and costs. Defendants further contend that an indigent car buyer may seek a waiver of fees and costs under Code of Civil Procedure section 1284.3, that the arbitration clause gives the arbitration panel discretion to grant a waiver of costs in the interest of fairness, and that under *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413 an arbitrator has the authority to waive or reallocate costs of appeal to protect an indigent buyer. Defendants also assert that in most cases, buyers enter into contingency fee agreements under which counsel, and not the buyer, would pay costs. Lastly, defendants assert that the dealership cannot afford to appeal every adverse arbitration award, so the cost provision "favor[s] the buyer by providing a better chance for finality of the initial arbitration award."

As reflected in the declaration from Gillespie's counsel, the cost of a second arbitration with three arbitrators is substantial. Counsel's declaration pertains to a second arbitration initiated several years ago, and the cost of that arbitration for one day is nearly

the same as the price of the used car Gillespie purchased in this case. The arbitration clause in this case requires the appealing party to pay the arbitration fees and costs of both sides in advance and does not include any fee or cost waiver procedure. The arbitration clause also does not give the buyer any idea as to the amount the buyer might be required to pay in advance. The arbitration clause also permits, but does not require, apportionment at the conclusion of the arbitration proceedings. Under these circumstances, we believe that the cost provision operates to discourage car buyers, and not the economically stronger car dealership, from pursuing a second arbitration due to uncertainties for the buyer regarding the amount of arbitration fees and costs that must be advanced, the procedure, if any, for a waiver of fees and costs, and the risk of having to bear large fees and costs.

### d. *Self-help remedies and small claims actions*

The arbitration clause allows the parties to "retain any rights to self-help remedies, such as repossession" and the "right to seek remedies in small claims court for disputes or claims within that court's jurisdiction." Gillespie argues that these exclusions from arbitration apply to claims a dealership is likely to bring.

We do not believe these provisions are substantively unconscionable. The arbitral forum is an alternative to the judicial forum. (See *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 539 [the policy in favor of enforcing arbitration agreements is based on the assumption that parties have chosen arbitration as " 'as an alternative to the judicial process' "]; *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1076 ["Arbitration has become highly favored as an economical, efficient alternative to traditional litigation in law courts"].) As self-help remedies may be sought outside the judicial forum, we perceive no unfairness in an arbitration clause allowing self-help remedies to also remain outside the arbitral forum. Regarding small claims actions, Gillespie fails to present any factual or legal basis for concluding that a car dealership is more likely to seek relief in small claims court than a car buyer. We

29

therefore have no basis for concluding that the exclusion of small claims actions from the arbitration clause is unfair to car buyers.

### e. *Other provisions*

### i. costs for initial arbitration

Gillespie also challenges the following cost provision concerning the initial arbitration: "We will *advance your* filing, administration, service or case management fee *and your* arbitrator or hearing fee all *up to a maximum of $2,500*, which may be *reimbursed* by decision of the arbitrator at the arbitrator's discretion." (Italics added.)

Gillespie argues that this provision "makes the consumer front all costs above $2,500," and that such costs may be a significant amount. Gillespie fails, however, to provide any evidence establishing that the $2,500 advance by the car dealership would not cover a consumer's portion of arbitration fees.

Gillespie further argues that a consumer is potentially responsible for all costs of arbitration under this provision. She contends that this is illegal under Code of Civil Procedure section 1284.3, subdivision (a), which provides that a consumer may not be required to pay "the fees and costs incurred by *an opposing party* if the consumer does not prevail in the arbitration . . . ." (Italics added.) Assuming, without deciding, that section 1284.3, subdivision (a), which is part of the CAA, applies to the conduct of the parties' arbitration, the parties' arbitration clause does *not* require the car buyer to pay the dealership's arbitration fees or costs. Rather, the cost provision provides that the car dealership will "advance" the car buyer's share of arbitration fees, and that the car buyer may be required to "reimburse" that amount at the arbitrator's discretion. Thus, the car buyer is only responsible for the buyer's *own* share of the arbitration fees.

### ii. class action waiver

Gillespie contends that the class action waiver is one-sided, that defendants do not give up anything in return, and that the waiver operates as an illegal exculpatory clause in violation of Civil Code section 1668. Gillespie's arguments are similar to those

addressed in *Discover Bank*. As we have discussed, *Concepcion* held that the *Discover Bank* rule, finding certain class arbitration waivers in consumer contracts unconscionable, was preempted by the FAA. (*Concepcion*, *supra*, 131 S.Ct. at pp. 1746, 1753.) *Concepcion* thus precludes the particular unconscionability arguments raised by Gillespie concerning the class waiver.

### iii. attorney's fees

The CLRA provides that a prevailing defendant may be awarded reasonable attorney's fees upon a finding that the plaintiff did not prosecute the action in "good faith." (Civ. Code, § 1780, subd. (e).) Gillespie contends that she "loses" this "protection" under the parties' arbitration clause and that she is "at risk for [defendants'] fees even if she loses a good faith CLRA claim."

We are not persuaded by Gillespie's argument. The arbitration clause provides that "[e]ach party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under *applicable law*." (Italics added.) Thus, defendants may recover their attorney's fees only to the extent permitted by "applicable law," which would include the CLRA's restrictions on attorney's fees for prevailing defendants.

### iv. National Arbitration Forum

The arbitration clause allows the car buyer to select one of the following organizations as the arbitration provider: the National Arbitration Forum, the American Arbitration Association, or any other organization subject to the car dealership's approval. Gillespie contends that the National Arbitration Forum stopped arbitrating consumer matters prior to her signing the contract. She contends that the car dealership's continued inclusion of the National Arbitration Forum in the arbitration clause, "knowing [it was] not a real option, means [the car dealership] willfully gave consumers the false appearance of a choice in arbitral forums, which is even more misleading and unconscionable."

Gillespie fails to persuasively articulate why the continued inclusion of the National Arbitration Forum, whether willful or inadvertent, causes the provision concerning the selection of an arbitration organization to be unfairly one-sided, which is the basis for a finding of substantive unconscionability. (*Little*, *supra*, 29 Cal.4th at p. 1071; see *Pinnacle*, *supra*, 55 Cal.4th at p. 246.) The arbitration clause allows the car buyer to select the American Arbitration Association, or any other arbitration organization subject to the car dealership's approval. Gillespie fails to demonstrate, for example, that the American Arbitration Association is a more favorable forum for car dealerships than buyers.

### v. approval of arbitration provider

Gillespie next contends that defendants have "veto power" over the selection of an arbitrator. The arbitration clause states: "You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum . . . (www.arb-forum.com), the American Arbitration Association . . . (www.adr.org), or any other organization that you may choose subject to our approval." The selection provision essentially requires that the parties mutually agree on an arbitration provider. There is no evidence in the record that defendants have unreasonably withheld approval of an arbitration provider that was selected by a car buyer.

Gillespie also contends that the car dealership "will never have to . . . choose where to file its arbitral dispute because it excluded its claims from arbitration." Contrary to Gillespie's suggestion, the arbitration clause generally includes any claims the dealership might have against the car buyer. The arbitration clause provides that "[a]ny claim or dispute . . . between [the car buyer] and [the car dealership] . . . which arises out of or relates to [the car buyer's] credit application, purchase or condition of [the] vehicle, this contract or any resulting transaction or relationship . . . shall, at [the car buyer's] or [the car dealership's] election, be resolved by neutral, binding arbitration and not by a court action."

32

### vi. mandatory arbitration

Lastly, Gillespie contends that arbitration is not mandatory under the arbitration clause except when defendants " 'choose' arbitration," which only occurs when a consumer brings a class action. Gillespie's argument is not persuasive. The arbitration clause provides that the car buyer or the dealership "may choose to have any dispute between [them] decided by arbitration and not in court or by jury trial." (Capitalization omitted.) The arbitration clause further states, as quoted above, that any claim between the parties arising out of the purchase of the car "shall, at [the car buyer's] or [the car dealership's] election, be resolved by neutral, binding arbitration and not by a court action." Arbitration is thus mandatory to the extent the car buyer *or* the car dealership elects to proceed in arbitration.

In sum, three of the provisions in the arbitration clause – the exception to arbitral finality for an award in excess of $100,000, the exception to arbitral finality for an award that includes injunctive relief, and the requirement that the appealing party advance both parties' costs for the second arbitration with a three-arbitrator panel – combine to deny Gillespie the mutual benefits of the arbitration clause. Any arbitration award of significance to the car buyer, that is, in excess of $100,000 or containing injunctive relief, will result in the buyer being subjected to delay and complexity through a second arbitration initiated by the dealership. Further, the cost provision for the second arbitration, which requires the appealing party to advance the full cost of arbitration with a three-arbitrator panel, makes it unlikely that a car buyer seeking a second arbitration, when the buyer obtains a zero award for example, will actually utilize the option of a second arbitration. Considering these three provisions together, we determine that they are "unfairly one-sided" (*Little*, *supra*, 29 Cal.4th at p. 1071) and are otherwise " 'so one-sided as to "shock the conscience." ' " (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) Based on the sliding scale test (*Pinnacle*, *supra*, at p. 247), and in view of our determination that a

moderate level of procedural unconscionability exists, we conclude that these three substantively unconscionable provisions cannot be enforced.

### C.  *Severability*

"Civil Code section 1670.5, subdivision (a) gives the trial court discretion to either refuse to enforce a contract it finds to be unconscionable, or to strike the unconscionable provision and enforce the remainder of the contract.  It provides:  'If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.'  The trial court has discretion under this statute to refuse to enforce an entire agreement if the agreement is 'permeated' by unconscionability.  [Citations.]  An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . .  Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.'  [Citations.]  'The overarching inquiry is whether " 'the interests of justice . . . would be furthered' " by severance.'  [Citation.]" (*Lhotka*, *supra*, 181 Cal.App.4th at p. 826.)  Further, if the "court is unable to cure [the] unconscionability through severance or restriction," the court "must void the entire [arbitration provision]." (*Armendariz*, *supra*, 24 Cal.4th at p. 125.)  A court "is not permitted to cure it through reformation and augmentation." (*Ibid.*)

In this case, we have determined that three provisions are substantively unconscionable:  the exception to arbitral finality for an award in excess of $100,000, the exception to arbitral finality for an award that includes injunctive relief, and the requirement that the appealing party advance both parties' costs for the second arbitration with a three-arbitrator panel.  The trial court determined that an additional provision, regarding the exclusion of self-help remedies from the arbitration clause, was also

34

substantively unconscionable. On the basis of these four defects, the court determined that the arbitration clause was permeated with unconscionability and refused to enforce the arbitration clause. We do not agree with the trial court that the exclusion of self-help remedies from the arbitration clause is substantively unconscionable. We will remand the matter so that the trial court may exercise its discretion on the issue of severance with respect to the three provisions that we have concluded are unconscionable: (1) the exception to arbitral finality for an award in excess of $100,000, (2) the exception to arbitral finality for an award that includes injunctive relief, and (3) the requirement that the appealing party advance both parties' costs for the second arbitration with a three-arbitrator panel.

## IV.  DISPOSITION

The February 25, 2013 order denying the petition to compel arbitration is reversed, and the matter is remanded to the trial court for the limited purpose of determining whether to sever the three provisions found unconscionable in this opinion.  The parties are to bear their own costs on appeal.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MIHARA, J.

_____

GROVER, J.